**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT LONDON**

**CIVIL ACTION NO. 10-10-DLB**

**LAURA RUTH COUCH**                                                                          **PLAINTIFF**

vs.                      **MEMORANDUM OPINION & ORDER**

**MICHAEL J. ASTRUE, Commissioner
SOCIAL SECURITY ADMINISTRATION**                                **DEFENDANT**

\*    \*    \*    \*    \*    \*    \*

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record and the parties' dispositive motions, will affirm the Commissioner's decision, as it is supported by substantial evidence.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Laura Ruth Couch protectively filed an application for a period of disability, disability insurance benefits (DIB), and supplemental security income (SSI) payments on March 4, 2005.[1] (Tr. 58-62). At the time of filing, Plaintiff was forty-five years old and alleged a disability onset date of April 15, 2000. (Tr. 58). She asserts a disabling condition due to back pain, high blood pressure, and a heart attack that occurred in February 2005 that now causes chest pain. (Tr. 43). Her application was denied initially and on

---

[1] This is Couch's second application for a period of a disability, DIB and SSI. (Tr. 54-56). Her first application was filed on January 14, 2003, which was denied initially on September 15, 2003. (Tr. 39-42). Plaintiff did not seek reconsideration of the initial determination, and the Administrative Law Judge (ALJ) did not reopen the prior decision.

1

reconsideration. (Tr. 43-50). At Plaintiff's request, an administrative hearing was conducted by video conference on June 13, 2007, by Administrative Law Judge (ALJ) Gloria B. York. (Tr. 51, 587-615). On August 30, 2007, ALJ York issued an unfavorable decision finding that Plaintiff was not disabled and therefore not entitled to SSI or DIB payments. (Tr. 13-21). This decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on December 11, 2009. (Tr. 8-10).

On January 11, 2010, Plaintiff filed the instant action. (Doc. # 1). The matter has culminated in cross-motions for summary judgment, which are now ripe for adjudication. (Docs. # 12, 13).

## II. DISCUSSION

### A. Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance, it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Id.* Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389 (6th Cir. 1999). Even if there is evidence favoring Plaintiff's side, the Commissioner's findings must be affirmed if supported by substantial evidence. *Listenbee v. Sec'y of Health & Human Servs.*, 846 F.2d 345, 349 (6th Cir. 1988). An administrative decision is

2

not subject to reversal merely because substantial evidence would have supported the opposite conclusion. *Smith v. Chater*, 99 F.3d 780, 781 (6th Cir. 1996).

The ALJ, in determining disability, conducts a five step analysis. Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments, alone or in combination, are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform his past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**B.     The ALJ's Determination**

At Step 1, the ALJ found that Plaintiff has not engaged in substantial gainful activity since her alleged onset date, April 15, 2000. (Tr. 18). At Step 2, the ALJ found Plaintiff's degenerative disc disease of the lumbar spine, coronary artery disease status post myocardial infarction and stent placement to the right coronary artery, hypertension, a mood disorder, and a history of drug abuse in reported remission to be "severe" impairments within the meaning of the regulations. (Tr. 18). At Step 3, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meet or medically equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 19). Specifically, the ALJ evaluated Plaintiff's non-exertional limitations under Section 12.00 (Mental Disorders) and the subsections thereunder, concluding that Plaintiff's condition did not meet or equal the requirements of any listing. (Tr. 19).

At Step 4, the ALJ found that Plaintiff retains the residual functional capacity (RFC) to perform a limited range of sedentary work. (Tr. 19). In particular, the ALJ found that Plaintiff can perform work at all levels subject to the following exertional and non-exertional limitations: "the claimant can lift and carry ten pounds occasionally and occasionally stand and walk during [ ] an eight hour workday; however, she must be able to alternately sit or stand while continuing to work, and she is limited to a low stress work environment." (Tr. 19). Additionally, the ALJ noted that Plaintiff has "an ongoing moderate limitation in concentration, persistence, and pace, but mild to no limitation in psychological function otherwise." (Tr. 19). Based on this RFC, ALJ York concluded at Step 4 that Plaintiff was unable to perform her past relevant work as a nurse's aide and an assistant cook. (Tr. 22).

At Step 5, the ALJ considered the Plaintiff's age (younger individual), education (high school), work experience and RFC in conjunction with the Medical-Vocational Guidelines and testimony from a vocational expert, and concluded that there exist a significant number of jobs in the national economy–such as a weigher/measurer/checker, an assembler, and sorter/packer–that Plaintiff can perform despite her exertional and non-exertional limitations. (Tr. 23, 591-92). Therefore, the ALJ found that Plaintiff has not been under a disability as defined by the Social Security Act. (Tr. 24).

### C. Analysis

Plaintiff advances two arguments on appeal. First, Plaintiff contends the ALJ improperly evaluated the credibility of her testimony relative to the pain, persistence, and limiting effects of her symptoms. Second, Plaintiff argues that the ALJ impermissibly substituted her own opinion in place of the medical opinions offered by treating physician Dr. Michele A. Friday and the psychologists at Kentucky River Community Care (KRCC).

4

Each of these arguments will be addressed in turn.

### 1. The ALJ Properly Assessed the Credibility of Plaintiff's Testimony Relative to the Pain, Persistence, and Limiting Effects of her Symptoms

Plaintiff argues that ALJ York erred in concluding that her testimony was not credible. Specifically, Plaintiff contends the ALJ discredited her subjective complaint testimony without sufficient explanation in violation of Social Security Ruling 96-7p. Plaintiff's argument is unpersuasive.

Credibility determinations are generally reserved for the ALJ and should not be discarded lightly. *Jones*, 336 F.3d at 476. Meaningful review, however, requires more than "blanket assertions that the claimant is not believable." *Rogers v. Comm'r Soc. Sec.*, 486 F.3d 234, 248 (6th Cir. 2007). Social Security Rule 96-7p requires the ALJ to explain her credibility determination so that it is "sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* The Court's review, then, is limited to determining whether the ALJ's explanations for discrediting the Plaintiff's testimony are reasonable and supported by substantial evidence in the record.

ALJ York, after lengthy explanation, concluded that Plaintiff's "statements concerning the intensity, persistence, and limiting effects" of her disabling symptoms were "not credible." (Tr. 21). Plaintiff complained of severe chest pain and fatigue after a February 2005 heart attack, but ALJ York determined that the severity of chest pain alleged was not credible because the evidence did not support her testimony that she needed to nitrogylcerin as often as reported. (Tr. 22). She also relied on the absence of medical records indicating treatment for severe chest pain since her initial treatment in 2005. (Tr.

5

22).  The medical records substantiate ALJ York's assessment: in June 2005 Plaintiff reported that she was free of chest pain (Tr. 447); in July 2005 Plaintiff complained of some chest pain, but that it dissipated with rest and medication (Tr. 461); in August 2005 Plaintiff denied the existence of any chest pain and reported that her shortness of breath was much improved.  (Tr. 559, 562-63).  During a visit with Dr. Friday in April of 2006, moreover, she did not complain of chest pain.  (Tr. 554).  On this basis, the ALJ accorded little weight to Plaintiff's complaint of severe chest pain.

Plaintiff also complained of severe back pain for which she sought physical therapy.  (Tr. 597-98).  The ALJ observed that although the Plaintiff complained of a long history of low back pain, an MRI revealed only mild findings where nerve root compression and neurological deficit were notably absent upon clinical examination.  (Tr. 22, 537).  In 2001, a lumbar MRI showed some degenerative changes, yet, there was no abnormal narrowing of the spinal column or spinal disc degeneration.  (Tr. 391, 540).  Treatment records in August 2005 indicated an "extremely small" herniation at L-5 S-1 with no other evidence of disc herniation or significant bulge.  (Tr. 537).  At her hearing, Plaintiff also expressed severe pain as a result of vascular disease, but ALJ York noted Plaintiff's June 2007 evaluation of that condition indicated normal results.  (Tr. 22, 586).  Accordingly, the ALJ did not commit reversible error when she discredited the severity of Plaintiff's subjective complaints with respect to these conditions.

Plaintiff also complained of a mood disorder, which causes her to have "real bad nerves."  (Tr. 21, 598).  The ALJ did not find Plaintiff's testimony credible given her general assessment and psychiatric functioning in 2003, which indicated only mild limitation.  (Tr. 211).  Moreover, she deemed it significant that Plaintiff had not sought mental health

treatment until her attorney advised it. (Tr. 22, 512-22). Further, the Court observes during an evaluation in August 2005, treatment notes indicate Plaintiff did not allege any mental impairments nor was she taking any medication for mental impairments. (Tr. 473). Her functioning was assessed as "not severe." (Tr. 474).

Despite ALJ York's conclusion that Plaintiff's subjective complaint testimony was not credible, she rejected state agency evaluations of Plaintiff's RFC that Plaintiff was capable of light work. Instead–opting to give Plaintiff "the greatest benefit of the doubt"– ALJ York determined Plaintiff was capable only of sedentary work. (Tr. 22). Contrary to Plaintiff's assertions, it is clear ALJ York stated sufficient reasons for her credibility findings, which were reasonable and supported by substantial evidence. For these reasons, the Court declines to disturb the ALJ's credibility findings on appeal.

  **2. The ALJ Properly Rejected Dr. Michele Friday's Assessment and Accorded Little Weight to the Kentucky River Community Care Assessments**

Next, Plaintiff contends the ALJ impermissibly rejected: (1) Dr. Friday's assessment that she is unable to work in even low stress environments; and (2) the opinions of KRCC psychologists who placed marked limitations on the Plaintiff's mental condition. In the Commissioner's view, ALJ York properly rejected Dr. Friday's opinion because it is inconsistent with the overall objective evidence, and further, she gave "good reasons" in refusing to accord it controlling weight. *See* 20 C.F.R. § 416.927(d). The Commissioner also argues ALJ York was well within her authority to accord little weight to the KRCC assessments in light of Plaintiff's brief course of treatment at the facility. The Commissioner's argument is well taken.

"Generally, the opinions of treating physicians are given substantial, if not controlling, deference." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)). However, such opinions do not automatically bind the ALJ, as the opinions of treating physicians are only entitled to controlling weight when they are "supported by objective medical evidence," *Jones*, 336 F.3d 469, 477 (6th Cir. 2003), and are uncontradicted by substantial evidence, *Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 927 (6th Cir. 1987). If the ALJ finds that the treating physician's opinion fails to meet these two conditions, she may discredit that opinion, so long as she communicates a reasoned basis for doing so. *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 441 (6th Cir. 2010) (citing *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987)). "The determination of disability is [ultimately] the prerogative of the [Commissioner], not the treating physician." *Warner*, 375 F.3d at 390 (quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)) (internal quotations omitted).

Plaintiff was seen by Dr. Friday beginning in August 2005 through May 2006 subsequent to her treatment for a heart attack in February 2005. (Tr. 551-574). In April 2006, Dr. Friday filled out a "Physical Residual Functional Capacity Questionnaire" in which she indicated–by checking a box–that Plaintiff is incapable of performing "low stress" jobs. (Tr. 524). She also opined that Plaintiff's pain and symptoms would interfere with her attention and concentration "constantly" in a typical workday and would require Plaintiff's absence from work in excess of four days per month. (Tr. 524, 526). Plaintiff contends that the reasons supporting the ALJ's rejection of Dr. Friday's assessment–lack of objective evidence to support her conclusions coupled with a relatively brief treating relationship–are insufficient, and argues that Dr. Friday's opinions and assessed limitations are controlling.

8

(Doc. #16 at 16). The Court disagrees.

Contrary to Plaintiff's assertions, the ALJ did not commit reversible error when she rejected Dr. Friday's RFC assessment (i.e. that Plaintiff was unable to perform even low stress work). (Tr. 524-26). A treating physician's opinion is only entitled to deference when it is a *medical opinion*. *See* 20 C.F.R. § 416.927(d). When a treating physician instead submits an opinion on an issue reserved to the Commissioner–such as whether the claimant is "disabled" or "unable to work"–the opinion is not entitled to any particular weight. 20 C.F.R. § 416.927(e); Social Security Regulation 96-5p ("Medical sources often offer opinions about whether an individual . . . is "disabled" or "unable to work" . . . . Such opinion on these issues must not be disregarded. However, even when offered by a treating source, they can never be entitled to controlling weight or given special significance."). Because Dr. Friday's questionnaire assessment indicating Plaintiff's inability to perform low stress work is merely an alternative way of stating that–in her opinion–Plaintiff was "unable to work," it was properly discounted by ALJ York as an opinion on an issue reserved to the Commissioner. *Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 493 (6th Cir. 2010).

Dr. Friday's own treatment notes, moreover, are internally inconsistent with respect to the non-exertional limitations she recommended. The same questionnaire wherein she opines Plaintiff cannot work, Dr. Friday indicated in the space provided for "Diagnoses" that Plaintiff suffered from coronary artery disease, status/post stent, and hypothyroidism. (Tr. 523). Notably absent was any diagnosed anxiety, much less incapacitating anxiety. Additionally, the short duration of the treatment relationship between Plaintiff and Dr. Friday cannot be overemphasized. Plaintiff claims a disability onset date of April 15, 2000, yet–in the seven years between her alleged onset date and ALJ York's decision–she was seen

by Dr. Friday for approximately ten months. By the end of their treatment relationship, Dr. Friday no longer indicated back pain, dizziness or tachycardia; Plaintiff's physical exam returned normal results. (Tr. 551-52). Given these facts, ALJ York's rejection of Dr. Friday's opinion was appropriate.

In addition, the ALJ correctly accorded little weight the psychological assessments done at KRCC. (Tr. 19, 22). Specifically, ALJ York rejected KRCC Dr. Irfan Afaq's GAF score of 50, which was assessed in December 2005. (Tr. 515-16). "GAF is a clinician's subjective rating of an individual's overall psychological functioning. A GAF score may help an ALJ assess mental RFC, but it is not raw medical data." *Kennedy v. Astrue*, 247 F. App'x 761, 766 (6th Cir. 2007) (citing *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 503 n.7 (6th Cir. 2006)). Consequently, a GAF score "'has no direct correlation to the severity requirements of the mental disorders listings,'" *DeBoard v. Comm'r of Soc. Sec.*, 211 F. App'x 411, 415 (6th Cir. 2006) (quoting *Wind v. Barnhart*, 133 F. App'x 684, 691-92 n.5 (11th Cir. 2005)), but is merely a vehicle which "allows a mental health professional to turn medical signs and symptoms into a general assessment, understandable by a lay person, of an individuals's mental functioning," *Kennedy*, 247 F. App'x at 766. A GAF score of 50 indicates serious impairment in psychological functioning. *See Collins v. Comm'r Soc. Sec.*, 357 F. App'x 663, 665 n.2 (6th Cir. 2009) (quoting *Kornecky v. Comm'r Soc. Sec.*, 167 F. App'x 496, 503 (6th Cir. 2006)) (explaining that a GAF score of 41-50 "indicates serious symptoms (*e.g.*, suicidal ideation, severe obsessional rituals, frequent shoplifting), or any serious impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job)."). Dr. Afaq's own treatment record is internally inconsistent; it notes that Plaintiff had a GAF score of 50, which is indicative of serious

10

symptoms such as suicidal ideation; however, the treatment notes indicate that Plaintiff affirmatively denied any suicidal ideation and that "[h]er thought processes were organized with no looseness of association." (Tr. 516).

Moreover, the Court notes that, in November 2005 prior to Dr. Afaq's assessment, Plaintiff denied suicidal and homicidal ideation, further reporting that she was "doing ok;" an evaluation again inconsistent with a GAF score of 50. (Tr. 517). Plaintiff was seen in August 2003 by psychiatrist Kevin Eggerman who diagnosed Plaintiff with generalized anxiety disorder, but observed only moderate anxiety and no "affective distress." (Tr. 208-13). He assessed minimal to mild psychological functioning, finding a GAF score of 65 to 70. (Tr. 212). He assessed her "ability to respond appropriately to work pressures in a usual work setting is mildly limited, and her ability to respond appropriately to changes in a routine work setting minimally limited." (Tr. 212). The ALJ relied on Dr. Eggerman's assessment, which she deemed more consistent with Dr. Afaq's *overall* psychological evaluation wherein Plaintiff presented moderate limitations but not severe impairments.

In sum, the internal inconsistencies in Dr. Fridays's opinions and lack of contemporaneous medical evidence to support her restrictive assessment of Plaintiff's exertional and non-exertional limitations provide substantial evidentiary support for ALJ York's decision to reject those opinions. *See Coldiron*, 2010 WL 3199693, at *7. The Court finds that the ALJ's proffered reasons for not according controlling weight to Dr. Friday's assessment satisfies the "good reason" requirement contained in 20 C.F.R. § 416.927. ALJ York also provided sufficient reasons for according little weight to the psychological assessment of Dr. Afaq in light the entirety of the medical record.

## III. CONCLUSION

The record contains substantial evidence supporting the ALJ's decision to reject Dr. Friday's opinion and accord little weight to the KRCC psychological assessments. The ALJ did not err in discrediting Plaintiff's subjective complaint testimony as inconsistent with the entirety of the medical record. Although the record contains differing opinions as to the extent of Plaintiff's exertional and non-exertional limitations, the Court finds that the ALJ properly performed her duty as trier of fact in resolving the conflicts in evidence. *See Richardson v. Perales*, 402 U.S. 389, 399 (1971). Accordingly, for the reasons stated,

**IT IS ORDERED** as follows:

1. The decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED**;

2. Plaintiff's Motion for Summary Judgment (Doc. # 12) is hereby **DENIED**;

3. Defendant's Motion for Summary Judgment (Doc. # 13) is hereby **GRANTED**; and

4. A Judgment affirming this matter will be entered contemporaneously herewith.

This 18th day of February, 2011.



Signed By:
*David L. Bunning*  DB
United States District Judge

G:\DATA\SocialSecurity\MOOs\London\6-10-10-CouchMOO.wpd